COVY VS THE STATE:

*Touching indictments under the gaming acts.*
*As to indictments against defendants jointly, under*
*these acts.*

1. An indictment may be sustained under the act of 1826, (prohibiting gaming *on one's premises*,) which charges the person with permitting gaming to be exhibited in his house.

2. An indictment against one, for permitting gaming to be carried on in his house, which states the offence to have been committed at ———— in the county of **T.** (describing the county,) is a sufficiently certain description of the place where the offence is committed, to sustain the indictment.

3. Indictments for misdemeanors may well charge in *several counts*, different offences,—the judgment upon each of which being the same.

4. For the offence of keeping *a gaming house*, under our statutes, two or more persons may be indicted *jointly*, and one be convicted, and the others acquitted.

5. It is not available in error upon a judgment rendered against one for keeping a gaming house, that the jury assessed in their verdict a less fine than is prescribed by the act.

John C. Cabiness and Ransom Covy, were indicted in the Circuit Court of Tuskaloosa county, for keeping a gaming house. The indictment consisted of several counts, charging—

First—That the said Cabiness and Covy, on the nineteenth day of September, A. D., eighteen hundred and thirty-five, at ——— ——— in the county aforesaid, (Tuskaloosa,) then and there knowingly did permit and suffer, a Faro Bank for gaming, to be

carried on and exhibited, in a house, then and there occupied by the said Cabiness and Covy, &c.

Second—That the said Cabiness and Covy, on the said nineteenth day of September, in the aforesaid year, at ——— ——— in the county aforesaid, did then and there knowingly permit and suffer to be carried on and exhibited in their house, a Faro Bank, kept for gaming, &c.

Third—That the said Cabiness and Covy, on the said nineteenth day of September, in the year aforesaid, at ——— ——— in the county aforesaid, did then and there knowingly permit and suffer a Roulette table kept for gaming, to be carried on and exhibited, in a building then and there occupied by the said Cabiness and Covy, &c.

The cause under this indictment coming on for trial, the said Cabiness and Covy filed a demurrer thereto, which was overruled. The defendants then moved the Court for permission to plead separately, which was allowed. They then moved for leave to sever in their defence, which the Court refusing to allow, the defendants plead not guilty, and verdict was rendered acquitting Cabiness, and on the first and second counts finding Covy guilty; and thereon assessing a fine against him of one hundred dollars.

Afterwards the defendant, Covy, moved the Court in arrest of judgment, which being overruled, that, as well as the judgment of the Court upon the demurrer, were reserved for the decision of the Court here.

*Ellis* and *Peck*, for the plaintiff in error.
*Attorney General*, contra.

HITCHCOCK, C. J.—This was an indictment in the Circuit Court of Tuskaloosa county, against Covy and Cabiness, under the gaming acts.

There are three counts in the indictment. The first charges them with " knowingly permitting and suffering a Faro Bank for gaming, to be carried on and exhibited in a house occupied by them."

The second count charges them with " knowingly permitting and suffering to be carried on and exhibited in their house, a Faro Bank for gaming."

The third count charges them with " knowingly permitting and suffering a Roulette Table, kept for gaming, to be carried on and exhibited in a building occupied by them."

They are charged in all three counts jointly, and the offence is laid, " at —— —— in the county of Tuskaloosa."

There was a general demurrer to this indictment, which was overruled, and the point reserved for the consideration of this Court.

The defendants then pleaded separately, and asked leave to sever in their defence, which was refused. They were then tried, and Cabiness was found not guilty; Covy was found guilty on the two first counts, and not guilty on the third, and a fine of one hundred dollars was assessed by the jury.

The defendant then moved an arrest of judgment, which was overruled, and the point reserved for the consideration of this Court, as novel and difficult.

The defendant has made the following points upon the questions referred to this Court—

1. That the act of eighteen hundred and twelve, under which this indictment was framed, was re-

pealed by the act of eighteen hundred and twenty-six, on the same subject.

2. That the indictment is uncertain in not stating the place where the house, in which the offence is charged to have been committed, is situated.

3. That the indictment is double, the third count charging a separate and distinct offence from the first and second, and

4. That the defendants should have been charged separately, as well as jointly.

1. There can be no doubt, that notwithstanding the act which *establishes* the Digest of the statute laws, made by Mr. Aikin, if there are laws in that book, which come in conflict with each other, the latter law must repeal the former. The rules of construction in this particular, must apply; and if it be true, that the act of eighteen hundred and twelve is repealed by the act of eighteen hundred and twenty-six, and this indictment is founded upon the act of eighteen hundred and twelve, the demurrer should have been sustained.

By the act of eighteen hundred and twelve, the offences described in this indictment are prohibited from being carried on in any "house, out house, *or other building,*" of any person, or persons. By the act of eighteen hundred and twenty-six, the same offences are prohibited from being carried on, "*on the premises*" of any person, or persons. The penalty under the act of eighteen hundred and twelve, is to be not less than one hundred dollars, nor over two thousand dollars, and standing in the pillory one hour on three successive days. In the latter, it is to be not less than five hundred dollars, nor more than two

thousand dollars, and imprisonment not less than two, nor more than twelve months.

It is evident, from this state of the case, that if the indictment can be sustained under the act of eighteen hundred and twenty-six, the question of the conflict of these two acts, does not arise. In the latter act, the word *premises* is used, instead of the words, *house, out house, or other building*—a word more comprehensive in its meaning, and which includes all the other words; for there can be no doubt that a man's premises may include his house.

The difference in the penalty can have no bearing upon the question arising upon the demurrer. The inquiry then properly arises, under the second point raised, whether the allegation, that the offence was committed in the county of Tuskaloosa, "in the house occupied by the defendants," as in the first and third counts, or " in their house," as in the second count, is a sufficient description of the *premises*, under the statute.

°1T.R.754    In the case of *J. Anson* vs *Stewart**—Mr. Justice *Buller* remarked, that in the indictments for keeping a bawdy house, the " indictment must state the place where the house is situate, and the time ;" " for the offence is the keeping of the house." Under the authority of this decision, it is contended that this indictment is insufficient; that the *place*, where the house was situated, should have been designated with a greater degree of certainty, so that the defendant might know how to prepare for his defence; and also to enable him to plead the record of a former recovery or acquittal, as the case might be.

The case above cited, was an action for a libel, in

charging the plaintiff with being a *swindler.* The Court decided, that a plea of justification to such an action, must state the particular instances of fraud, upon which the charge was made; and that it was not sufficient to state that the plaintiff " had been illegally, fraudulently, and dishonestly concerned with a gang of swindlers and common informers, and had been guilty of deceiving and defrauding divers persons, with whom he had dealings, &c.;" and in the illustration of this position, the judge made use of the expressions above quoted.

It is admitted, that every material fact, which is a necessary ingredient in the offence, must be stated. Hence the place is material; it must be on the *premises,* which in this instance, is stated to be the house of the defendants, within the county of Tuscaloosa. Formerly, it was necessary in England, to name the town, hamlet, parish, or hundred, or the manor, castle, forest, or other known place, where the offence was committed, besides the county. This strictness was required, because the jury came from the place described. But in England, since the jury are returned from the body of the county, it is sufficient to state only the county in the *venire,* to which the jurisdiction of the Court extends;* and in indictments *Arch. 38. for offences created by statute, if any ingredient mentioned in the statute, be stated in the words of the statute, the indictment will be good.

In this State, the jury comes from the body of the county, and we have no subdivisions into parishes, hamlets, &c.; and though in some of our counties we have incorporated towns and cities, yet our juries do not come from them, and the jurisdiction of the

Circuit Court is not confined to them; they form a part of, and are properly included in the general designation of the county, in which they are situated, and this must be the sense, in which the expressions used by Mr. Justice *Buller* were understood by him.

The *place*, therefore, where the house is situated is sufficiently described, and would be sufficient to enable the party to avail himself of the record, in pleading a former acquittal, or conviction—a plea which often requires parol proof to make out a case of identity.

3. As to the third point, that the indictment is double, the third count charging a distinct offence, from that in the first and second, it is sufficient to remark, that the authority relied upon by the counsel *Arch. 55. for the defendant,[*] only goes to show, that two or more offences cannot be charged in any one *count*. The books are full of authority to show, that indictments for misdemeanors may contain several counts for different offences, provided the judgment upon †ib 61. each is the same.[†]

4. As to the fourth point, that the defendants should have been charged *separaliter*, as well as jointly, it is only necessary to remark, that this is proper only where a number of persons are included in the same indictment, for keeping different disorderly houses. This is the law, as stated in the authority referred to ‡1 Russ. on in the defendant's brief.[‡] But when the offence crimes, 301 8 East. 46. wholly arises from the same joint act, which is in itself criminal, as keeping a gaming house, although the offence of several can not but be several, because one man's offence cannot be another's; yet the defendants may be indicted jointly and severally, or

jointly only, for it sufficiently appears that all are joined in such act—each must be guilty, and therefore some may be convicted, and some acquitted.[*]    [*] 3 Bacon, 563.

We are, therefore, of the opinion, that there was no error in overruling the demurrer.

It is well settled, that that which is not good on demurrer, is not good in arrest of judgment. Whatever is fatal to the demurrer is, therefore, fatal to the motion in arrest of judgment. The only objection that can be assigned for error on the latter motion is, that the fine assessed by the jury was less than the law of eighteen hundred and twenty-six authorised. To this it may be replied, that the defendants can not complain if the fine is less than what the law considers their just deserts; no one can allege an error in his own favor.

The judgment must, therefore, be affirmed.

COLLIER, J.—Not sitting.